IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JENNIFER OSBORNE<br>1937 Hopkins Street<br>Defiance, Ohio 43512 | ) ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT** |
| THE FILLING MEMORIAL HOME OF<br>MERCY, INC.<br>N160 State Route 108<br>Napoleon, Ohio 43545 | ) ) ) ) ) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve also:**<br>The Filling Memorial Home of Mercy,<br>Inc.<br>c/o Terri Rodriguez<br>N160 State Route 108<br>Napoleon, Ohio 43545 | ) ) ) ) ) ) ) | |
| Defendant. | ) | |

Plaintiff, Jennifer Osborne, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

## **PARTIES**

1. Osborne is a resident of the city of Defiance, county of Defiance, state of Ohio.

2. The Filling Memorial Home of Mercy, Inc. ("Filling Home") is a domestic, non-profit corporation, with a principal place of business in Napoleon, Ohio.

3. Filling Home was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq*.

4. Filling Home was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. 126 § 12101 *et seq*.

## **JURISDICTION & VENUE**

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Osborne is alleging a Federal Law Claims under The Americans with Disabilities Act ("ADA") 42 U.S.C. 126 § 12101 *et seq*.

6. All material events alleged in this Complaint occurred in county of Henry.

7. This Court has supplemental jurisdiction over Osborne's state law claims pursuant to 28 U.S.C. § 1367 as Osborne's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. Within 300 days of the conduct alleged below, Osborne filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2020-00338 against Filling Home.

10. On or about August 13, 2020, the EEOC issued and mailed a Notice of Right to Sue letter to Osborne regarding the Charges of Discrimination brought by Osborne against Filling Home in Charge No. 532-2020-00338.

11. Osborne received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

12. Osborne has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Osborne has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## **FACTS**

14. Osborne is a former employee of Filling Home.

15. Filling Home hired Osborne on or about May 13, 2019.

16. Filling Home employed Osborne as a direct support professional.

17. Osborne suffers from Articular Cartilage Disorder.

18. Osborne's Articular Cartilage Disorder prevents her from standing for more than 15 minutes at a time without a short break.

19. The symptoms of Articular Cartilage Disorder substantially impair one or more of Osborne's major life functions such as walking.

20. As a result of suffering from Articular Cartilage Disorder, Osborne is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

21. As a result of suffering from Articular Cartilage Disorder, Osborne is and was considered disabled within the meaning of the ADA 42 U.S.C. 126 § 12101 *et seq*.

22. Filling Home became aware that Osborne suffers from Articular Cartilage Disorder.

23. In the alternative, Filling Home perceived Osborne as being disabled.

24. In the alternative, the Filling Home perceived that Osborne's medical condition constituted a physical impairment.

25. Despite this actual or perceived disabling condition, Osborne was still able to perform the essential functions of her job with or without accommodation(s).

26. Osborne disclosed in her interview that she had a disability in her knees.

27. Osborne disclosed in her interview that as a result of having a disability in her knees, she had trouble standing or walking for long periods of time without taking a short break.

28. Osborne initially applied for a Nursing Home position.

29. After Osborne disclosed her Articular Cartilage Disorder to Filling Home, Filling Home then offered her a position as a direct support professional as it required less standing.

30. After Osborne disclosed her Articular Cartilage Disorder, Filling Home then offered her a position as a direct support professional as it was a mostly seated position.

31. Filling Home assigned Osborne to high functioning clients who mostly needed supervision.

32. Osborne completed her duties with or without reasonable accommodation(s) for one month.

33. On or about June 20, 2019, Amber Falor, Osborne's Team Lead, called Osborne.

34. During the June 20, 2019 call, Falor told Osborne that Osborne would need to attend a parade with her clients on June 22, 2019.

35. During the June 20, 2019 call, Osborne asked if Osborne would need to bring her own chair due to her medical condition.

36. During the June 20, 2019 call, Falor told Osborne that she would not need a chair because "there will be plenty of seating."

37. During the June 20, 2019 call, Falor told Osborne that Osborne would be seated most of the time at the parade.

38. Supervising clients at an off-site location was not an essential job function of Osborne's position.

39. When Osborne arrived at the June 22, 2019 parade, she learned that it was actually a street fair (hereinafter, the "June Street Fair").

40. When Osborne arrived at the June Street Fair, she learned that her duties would consist of standing and walking around to supervise her clients.

41. During the June Street Fair, after approximately two hours of standing and walking, Osborne asked Falor how much longer Osborne would have to stay at the street fair.

42. During the June Street Fair, Osborne told Falor that Osborne was in excruciating pain as a result of standing and walking around for two hours.

43. During the June Street Fair, Falor told Osborne that Falor did not know that Osborne's disability was "that bad."

44. During the June Street Fair, Osborne asked if she would be permitted to leave the June Street Fair so that she could get medication for her knees.

45. During the June Street Fair, Osborne complained to Defendant that Defendant was not providing her an accommodation for her disability.

46. On or about June 24, 2019, Osborne discussed the June Street Fair with her manager, Amy Rosebrock.

47. During all material events asserted herein, Rosebrock is and/or was a manager and/or employer of Filling House.

48. During all material events asserted herein, Rosebrock has and/or had authority to hire, fire, and/or discipline employees.

49. During the June 24, 2019 meeting with Rosebrock, Osborne told Rosebrock that Osborne was in extreme pain due to standing for hours at the June Street Fair.

50. During the June 24, 2019 meeting with Rosebrock, Osborne complained to Rosebrock that Filling Home was not accommodating her disability.

51. During the June 24, 2019 meeting with Rosebrock, Rosebrock told Osborne that Rosebrock would conduct an investigation.

52. During the June 24, 2019 meeting with Rosebrock, Rosebrock told Osborne that Osborne needed to bring in a letter from her doctor regarding her disability.

53. Osborne submitted a doctor's note to Rosebrock on June 28, 2019.

54. Osborne's June 28, 2019 doctor's note stated that Osborne suffered from Articular Cartilage Disorder.

55. Osborne's June 28, 2019 doctor's note stated that Osborne had a history of chronic knee pain and issues.

56. Osborne's June 28, 2019 doctor's note stated that Osborne should not stand for more than 15 minutes at a time and should always have seating available to her.

57. Upon information and belief, Rosebrock did not conduct an investigation regarding the June Street Fair.

58. Upon information and belief, Rosebrock did not get statements from witnesses regarding the June Street Fair.

59. Upon information and belief, Rosebrock did not look into whether and/or how Osborne should have been accommodated during the June Street Fair.

60. Defendants did not enter into an interactive process with Osborne to discuss whether and/or how to accommodate her disability after she submitted a letter from her doctor to Filling Home on June 28, 2019.

61. Rosenbrock advised Osborne that Filling Home was terminating Osborne's employment on or about July 3, 2019.

62. Rosenbrock advised Osborne that Filling Home was terminating Osborne's employment because of her disability.

63. When Rosenbrock told Osborne that Filling Home was terminating Osborne's employment, Rosenbrock told Osborne that Filling Home "won't accommodate your disability."

64. Upon information and belief, Filling Home has a progressive disciplinary policy,

65. Upon information and belief, Filling Home's disciplinary policy calls for escalating levels of discipline for accidents, beginning with a verbal warning, followed by a written warning, and ultimately leading up to termination.

66. Osborne did not receive a verbal warning.

67. Osborne did not receive a written warning.

68. Osborne did not receive a second written warning.

69. By terminating Osborne, Filling Home violated its own progressive discipline policy.

70. Upon information and belief, Filling Home does not violate its own progressive disciplinary policy when terminating the employment of a non-disabled individual.

71. Filling Home terminated Osborne's employment in violation of its own progressive disciplinary policy because of Osborne's disability.

72. Upon information and belief, Filling Home does not violate its own progressive disciplinary policy when terminating the employment of an individual it does not perceive to be disabled.

73. Filling Home terminated Osborne's employment because of her disability.

74. Alternatively, Filling Home terminated Osborne's employment in violation of its own progressive disciplinary policy because it perceived Osborne to be disabled.

75. Filling Home terminated Osborne's employment where it would not terminate the employment of a non-disabled individual.

76. Filling Home terminated Osborne's employment where it would not terminate the employment of an individual it does not perceive to be disabled.

77. Filling Home terminated Osborne's employment because of her disability.

78. Filling Home terminated Osborne's employment because it did not want to accommodate her disability.

79. Alternatively, Filling Home terminated Osborne's employment because of a perceived disability.

80. Filling Home terminated Osborne's employment in retaliation for Osborne complaining that Filling Home would not accommodate her disability.

81. Filling Home terminated Osborne's employment in retaliation for Osborne complaining that Filling Home was not treating Osborne favorably due to her disability.

### COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF
### 42 U.S.C. 126 § 12101 *et seq*.

82. Osborne restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

83. Osborne suffers from Articular Cartilage Disorder.

84. As a result of suffering from Articular Cartilage Disorder, if Osborne walks for more than 15 minutes, she must take a break before continuing to walk more.

85. Osborne's condition constituted a physical impairment.

86. Osborne's condition substantially impaired one or more of her major life activities including walking.

87. Osborne is disabled.

88. In the alternative, Filling Home perceived Osborne as being disabled.

89. Filling Home failed to provide Osborne reasonable accommodation(s).

90. Osborne requested the accommodation of being able to sit and/or take a break after walking for 15 minutes.

91. It was reasonable for Osborne to request to take a break after walking for 15 minutes.

92. It would not have caused an undue burden on Filling Home to allow Osborne to sit after walking for 15 minutes.

93. Filling Home did not enter into the interactive process with Osborne to discuss whether and/or how to accommodate

94. Filling Home treated Osborne differently than other similarly-situated employees based on her disabling condition.

95. Alternatively, Filling Home treated Osborne differently than other similarly-situated employees based on her perceived disabling condition.

96. On or about July 3, 2019, Defendant terminated Osborne's employment without just cause.

97. Defendant terminated Osborne's employment based on her disability.

98. Defendant terminated Osborne's employment because it did not want to accommodate Osborne's disability.

99. Alternatively, Defendant terminated Osborne's employment based her perceived disability.

100. Filling Home violated 42 U.S.C. 126 § 12101 *et seq*. by discriminating against Osborne based on her disabling condition.

101. Alternatively, Filling Home violated 42 U.S.C. 126 § 12101 *et seq*. by discriminating against Osborne based on her perceived disabling condition.

102. Defendant violated 42 U.S.C. 126 § 12101 *et seq*. when it discharged Osborne based on her disability.

103. Defendant violated 42 U.S.C. 126 § 12101 *et seq*. when it discharged Osborne based on her perceived disability.

104. Osborne suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 126 § 12101 *et seq*.

105. As a direct and proximate result of Defendant's conduct, Osborne suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF
## R.C. § 4112.01 *et seq*.

106. Osborne restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

107. Osborne suffers from Articular Cartilage Disorder.

108. As a result of suffering from Articular Cartilage Disorder, if Osborne walks for more than 15 minutes, she must take a break before continuing to walk more.

109. Osborne's condition constituted a physical impairment.

110. Osborne's condition substantially impaired one or more of her major life activities including walking.

111. Osborne is disabled.

112. In the alternative, Filling Home perceived Osborne as being disabled.

113. Filling Home failed to provide Osborne reasonable accommodation(s).

114. Osborne requested the accommodation of being able to sit and/or take a break after walking for 15 minutes.

115. It was reasonable for Osborne to request to take a break after walking for 15 minutes.

116. It would not have caused an undue burden on Filling Home to allow Osborne to sit after walking for 15 minutes.

117. Filling Home did not enter into the interactive process with Osborne to discuss whether and/or how to accommodate

118. Filling Home treated Osborne differently than other similarly-situated employees based on her disabling condition.

119. Alternatively, Filling Home treated Osborne differently than other similarly-situated employees based on her perceived disabling condition.

10

120. On or about July 3, 2019, Defendant terminated Osborne's employment without just cause.

121. Defendant terminated Osborne's employment based on her disability.

122. Defendant terminated Osborne's employment because it did not want to accommodate Osborne's disability.

123. Alternatively, Defendant terminated Osborne's employment based her perceived disability.

124. Filling Home violated R.C. § 4112.01 *et seq*. by discriminating against Osborne based on her disabling condition.

125. Alternatively, Filling Home violated R.C. § 4112.01 *et seq*. by discriminating against Osborne based on her perceived disabling condition.

126. Defendant violated R.C. § 4112.01 *et seq*. when it discharged Osborne based on her disability.

127. Defendant violated R.C. § 4112.01 *et seq*. when it discharged Osborne based on her perceived disability.

128. Osborne suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

129. As a direct and proximate result of Defendant's conduct, Osborne suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT III: RETALIATION IN VIOLATION OF 42 U.S.C. 126 § 12101 *et seq*.

130. Osborne restates each and every prior paragraph of this complaint, as if it were fully restated herein.

131. As a result of the Defendant's discriminatory conduct described above, Osborne complained about the disability discrimination she experienced.

132. As a result of the Defendant's discriminatory conduct described above, Osborne complained that Defendant would not accommodate her disability.

133. Subsequent to Osborne's reporting of disability discrimination, Defendant did not conduct an investigation.

134. In failing to conduct an investigation regarding the disability discrimination that Osborne reported, Defendant ratified the disability discrimination that Osborne suffered.

135. Subsequent to Osborne's reporting of disability discrimination, Defendant failed to accommodate Osborne's disability.

136. Subsequent to Osborne's reporting of disability discrimination, Defendant terminated Osborne's employment.

137. Defendant's actions were retaliatory in nature based on Osborne's opposition to the unlawful discriminatory conduct.

138. Pursuant to 42 U.S.C. 126 § 12101 *et seq.*, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined therein.

139. Osborne suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 126 § 12101 *et seq*.

140. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Osborne, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT IV: RETALIATION IN VIOLATION OF R.C. 4112.02(I)

141. Osborne restates each and every prior paragraph of this complaint, as if it were fully restated herein.

142. As a result of the Defendant's discriminatory conduct described above, Osborne complained about the disability discrimination she experienced.

143. As a result of the Defendant's discriminatory conduct described above, Osborne complained that Defendant would not accommodate her disability.

144. Subsequent to Osborne's reporting of disability discrimination, Defendant did not conduct an investigation.

145. In failing to conduct an investigation regarding the disability discrimination that Osborne reported, Defendant ratified the disability discrimination that Osborne suffered.

146. Subsequent to Osborne's reporting of disability discrimination, Defendant failed to accommodate Osborne's disability.

147. Subsequent to Osborne's reporting of disability discrimination, Defendant terminated Osborne's employment.

148. Defendant's actions were retaliatory in nature based on Osborne's opposition to the unlawful discriminatory conduct.

149. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

150. Osborne suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

151. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Osborne, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Osborne demands from Defendant the following:

(a) Issue an order requiring Filling Home to restore Osborne to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Osborne for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $ 25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Osborne's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Daniel S. Dubow*
Brian D. Spitz (0068816)
Daniel S. Dubow (0095530)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email:  brian.spitz@spitzlawfirm.com
         daniel.dubow@spitzlawfirm.com

*Attorneys For Plaintiff*

## JURY DEMAND

Plaintiff Jennifer Osborne demands a trial by jury by the maximum number of jurors permitted.

                                           /s/ *Daniel S. Dubow*
                                           Brian D. Spitz (0068816)
                                           Daniel S. Dubow (0095530)
                                           **THE SPITZ LAW FIRM, LLC**